IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JENNIFER RENO,

          Plaintiff,

v.                                                OPINION and ORDER

ALLSTATE PROPERTY AND CASUALTY             19-cv-387-jdp
INSURANCE COMPANY,

          Defendant.

---

After a fire damaged her home, plaintiff Jennifer Reno filed a claim under her homeowners insurance policy issued by defendant Allstate Property and Casualty Insurance Company. Allstate agreed that the fire damage was covered by Reno's policy, but it paid only a portion of the losses that Reno claimed. Reno sued Allstate in state court for breach of contract; Allstate removed the case to this court. Allstate has moved for summary judgment. Dkt. 20.

The parties' dispute concerns the documentation that Reno submitted in support of her claimed losses. Reno neglected to send Allstate a list of the property that she said had been damaged in the fire as required under the policy. Allstate told her that the list was missing, but she didn't provide the list until after this litigation began. Because the missing list prevented Allstate from effectively investigating Reno's claim, Allstate didn't breach its contract with her by paying only part of her claimed losses. The court will grant summary judgment to Allstate and close this case.

UNDISPUTED FACTS

The following facts are undisputed except where noted.

On May 5, 2018, Reno's home and personal property were damaged by a fire. Reno had a homeowners insurance policy issued by Allstate. She promptly informed Allstate of the fire damage, and Allstate began investigating the claim and adjusting the loss. Reno retained Miller Public Adjusters, LLC (which isn't a party to this lawsuit) to represent her in her insurance claim. Allstate concluded that damage caused by the fire was covered by Reno's policy.

On May 10, Allstate sent a packet of information to Reno that told her what to do so that Allstate could process her claim. In a letter contained in the packet, Allstate cited a provision of Reno's policy regarding her obligations after a loss. In addition to other requirements not at issue, the provision required Reno to give Allstate "a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed" and, within 60 days of the loss, "a signed, sworn proof of the loss" that included, among other information, "the actual cash value and amount of loss for each item damaged, destroyed or stolen." Dkt. 25-1, at 21 (bolding removed). Allstate also enclosed two forms for Reno to complete and return to Allstate within 60 days of the fire, titled "Sworn Statement in Proof of Loss" and "Personal Property Inventory Loss." The letter described both forms and told Reno that they were necessary to assist Allstate in processing her claim.

Allstate adjuster Eric Brandt inspected the damage to Reno's property in June. He sent a list of damaged items and an estimated valuation of the damage to Reno via her representative, Miller Public Adjusters. Through Miller, Reno requested an extension to submit her proof-of-loss statement and supporting documents. Allstate gave Reno a 30-day extension from her July 5 deadline and paid her $17,336.37 for the undisputed losses and remediation,

saying that it might make additional payments based on her proof-of-loss statement and supporting documents.

On August 17, Allstate wrote to Miller, saying that it hadn't received Reno's proof-of-loss statement or supporting documents and would not add any items to its inventory list at that time.

Miller adjuster Brian Balthazor sent an email to Brandt on December 3. Dkt. 46-2. In his email, Balthazor said that a loss inventory and invoices were attached, and he included a link that he said contained photographs of additional items for which Reno was claiming coverage. Dkt. 46-2. But Balthazor did not actually attach the loss inventory, and Brandt says that he was unable to open the link to the photographs. Reno doesn't dispute that Balthazor failed to attach the loss inventory, but she says that her attorney was able to access the photographs when he opened the link on an unspecified later date. Dkt. 38, ¶ 3. Whether Brandt was unable to access the photographs is disputed, although that dispute is ultimately immaterial.

Brandt replied in a letter on December 5. Dkt. 46-1. He did not mention the missing loss inventory or photographs. He said that Allstate would pay the expenses supported by the invoices attached to Balthazor's letter. He also wrote,

> The policy required a proof of loss to be filed within 60 days from the date of loss. Allstate Insurance allowed an additional 30 days from July 11, 2018 and there requested the proof of loss and its supporting documentation by the timeframe noted. On August 17, 2018, a follow up letter was sent indicating that the information was not received within the 30 additional days. We have closed the claim and are unable to add additional items or adjust the estimate.

Balthazor sent a completed proof-of-loss form to Allstate on December 31. Dkt. 46-3. He did not include any new supporting documents with the proof-of-loss form. Brandt

3

responded on January 14, 2019, saying that the proof-of-loss form didn't satisfy the policy's requirements because it didn't include the actual cash value of the property and because it "did not include the inventory list, photos, or original invoices from respective vendors for work performed." Dkt. 46-4. Brandt gave Balthazor 15 additional days to submit supporting documentation for Reno's additional claimed damages.

Balthazor responded on January 23 by re-forwarding his December 3 email to Brandt. Dkt. 46-5. The email again lacked a loss inventory. Brandt says that he was again unable to access the photographs through the link included in the email.

Brandt responded two days later to say that he had reviewed the information provided by Balthazor and that it contained no new information. Dkt. 46-6. He again quoted the policy's language quoted above regarding an insured's responsibilities after a loss. He said that Allstate would not grant any further extensions and that Reno's claim was closed. Neither Reno nor Miller provided any further information to Allstate before Reno filed this lawsuit.

ANALYSIS

Reno asserts three claims against Allstate for its refusal to pay the full amount of her claimed loss: (1) breach of contract; (2) bad faith; and (3) failure to make a timely payment as required by Wis. Stat. § 628.46. Dkt. 2-2.[1] The court concludes that Allstate is entitled to summary judgment on the breach of contract claim. The bad faith and statutory claims are contingent on the breach of contract claim, so those claims fail as well. *See Brethorst v. Allstate Prop. & Cas. Ins. Co.*, 2011 WI 41, ¶ 5, 334 Wis. 2d 23, 798 N.W.2d 467 (breach of contract

---

[1] Reno includes a fourth "claim" for punitive damages, but that is a request for relief, not a claim. *See Selective Ins. Co. of S. Carolina v. City of Paris*, 769 F.3d 501, 508 (7th Cir. 2014).

required for bad-faith claim against insurer); Wis. Stat. § 628.46(1) (untimely payment claim defeated if insurer has reasonable proof that it wasn't responsible for payment of claim).

The insurance policy states that it is governed by the law of the state where the insured home is located, which is Wisconsin. And both parties rely on Wisconsin law, so the court will do the same.

Under Wisconsin law, a claim for breach of contract has three elements: (1) a contract between the parties that creates obligations from the defendant to the plaintiff; (2) the defendant's failure to fulfill those obligations; and (3) damages flowing from the breach. *Brew City Redev. Grp., LLC v. Ferchill Grp.*, 2006 WI App 39, ¶ 11, 289 Wis. 2d 795, 714 N.W.2d 582. The court agrees with Allstate that Reno hasn't adduced any evidence of the second element because Reno didn't support her claimed losses with enough proof to allow Allstate to investigate her claims.

To recover under an insurance policy, an insured must substantially comply with the terms of her policy, including requirements for proof of loss. *Davis v. Allstate Ins. Co.*, 101 Wis. 2d 1, 303 N.W.2d 596, 599 (1981); *RTE Corp. v. Md. Cas. Co.*, 74 Wis. 2d 614, 247 N.W.2d 171, 180 (1976). This standard requires the insured's actions to meet "the essential purpose of the contract." *Davis*, 303 N.W.2d at 599. The parties agree that the essential purpose of proof-of-loss requirements is to allow the insurer to effectively investigate the insured's possible claims. *See* Dkt. 35, at 8; Dkt. 39, at 3. An insured has substantially complied with an insurance contract's proof-of-loss requirements if she gives the insurer enough information to allow it to "form an intelligent estimate of its rights and liabilities under the contract." *Duir v. John Alden Life Ins. Co.*, 573 F. Supp. 1002, 1008–09 (W.D. Wis. 1983) (quoting 3 J. Appleman, *Insurance*

*Law & Practice*, §§ 1444 at 113 and 1449 at 10 Supp. (1967, Supp. 1982)), *aff'd*, 754 F.2d 245 (7th Cir. 1985).

Reno's submissions to Allstate via her adjuster Balthazor did not meet this standard because she failed to give Allstate a loss inventory of items that she believed should have been covered. Allstate explicitly told Balthazor that Reno's proof of loss was missing an "inventory list." Dkt. 46-4, at 1. In response, Balthazor merely re-sent his earlier email, again failing to verify that he had actually attached the loss inventory. Allstate could not investigate Reno's claim without knowing what items she believed should have been covered, and she did not provide the documents necessary to allow Allstate to do so. Allstate's responses to Balthazor could have been clearer, but Allstate told Balthazor what information he needed to send, and Reno has identified no authority that would require Allstate to shoulder the consequences of Balthazor's carelessness.

Whether Brandt was able to view the photographs is a disputed fact that the court construes in Reno's favor as the nonmoving party. But a set of photographs without an inventory list would not be enough to allow Allstate to effectively investigate Reno's claim. Without such a list, Allstate would not know what the photographs depicted, how much Reno thought the items were worth, or how much damage Reno thought the items had sustained. So even assuming that Brandt was able to view the photographs, Reno failed to substantially comply with her policy's proof-of-loss provisions.

Reno contends that even though she didn't provide Allstate with a loss inventory, she substantially complied with her policy's provisions because she promptly gave Allstate notice of the fire, which allowed Allstate's representative, Brandt, to investigate her claim by surveying the damage within a month of the fire. She relies on *Welton Enterprises, Inc. v. Cincinnati*

*Insurance Company*, 131 F. Supp. 3d 827 (W.D. Wis. 2015), in which the court held that a jury could find that an insured had substantially complied with its proof-of-loss obligations by promptly informing its insurer of the damage and allowing the insurer to inspect it. *Id.* at 839. But the insurer's alleged breach in *Welton* was its outright denial that the policy covered any of the loss; here, the parties agree that the fire caused a covered loss but they dispute the amount of the loss. The point of *Welton* is that an insurer may raise an insured's failure to comply with a policy's proof-of-loss requirements as a defense only if that failure could have caused the insurer to reach the conclusion challenged by the insured. *See id.* at 838–39. In *Welton*, the insurer didn't need proof of loss to effectively investigate the insured's claim and conclude that the damage wasn't covered by the policy; it only needed to know that the damage had occurred so that it could view the damage. Here, Allstate needed to know what losses Reno believed should have been covered before it could investigate those losses. Reno failed to substantially comply with the requirements of her policy because she failed to give Allstate a loss inventory.

      Finally, Reno contends that Allstate should have known that she intended to claim more personal property than Allstate had identified in its own investigation and that Allstate failed to conduct a diligent and fair investigation of her claim. She says Allstate should have known this because her policy limit for personal property was far higher than the $17,336.37 that Allstate had paid up to that point. But she cites no authority for the proposition that an insurer should assume that an insured will claim the full value of her policy without any such indication from the insured. Nor does she explain how Allstate could have conducted a diligent and fair investigation of her claim if it did not know what personal property she claimed losses on. The fact remains that it was Reno's responsibility under her policy to provide Allstate with enough information to allow Allstate to effectively investigate her claim, but she failed to do so.

CONCLUSION

The undisputed facts show that Reno did not substantially comply with the contract's proof-of-loss requirements, so her breach of contract claim fails as a matter of law. This dooms Reno's remaining claims. Accordingly, the court will grant Allstate's motion for summary judgment and close this case.

ORDER

IT IS ORDERED that defendant Allstate Property and Casualty Insurance Company's motion for summary judgment, Dkt. 20, is GRANTED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered July 7, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge